JOSEPH NOLL, Secretary Department of Industry, Labor and HumanRelations
You have requested my opinion concerning the administration of the Wisconsin Relocation Assistance Act (secs. 32.19 to 32.25, Stats.). Specifically, you ask whether the Department of Industry, Labor and Human Relations may approve a relocation plan submitted under sec. 32.25 (1), Stats., that requires persons to execute a *Page 95 
waiver of the relocation benefits provided by the act as a condition of participation in the program.
You have presented me with the following facts:
A municipality wishes to begin a public project involving "voluntary acquisitions" and the relocation of persons to better housing. The project has no defined boundaries and the properties are to be selected solely on the basis of visible signs of serious housing deterioration. Participation in the program requires:
 1. An owner-occupied property which is uneconomical to rehabilitate; and
 2. The owner must meet certain income guidelines and be willing to waive the relocation benefits provided by sec. 32.19, et seq. in exchange for a deferred loan.
The project intends to reimburse an owner for the fair market value of his property in cash and offer a deferred loan and an additional $500.00 designated as a moving and dislocation allowance. The loan and allowance are given in lieu of relocation assistance benefits. You indicate that the program is entirely voluntary on the part of the property owner and the municipality has no intention of acquiring the property unless the owner is willing to waive relocation benefits.
The Legislature has declared it to be in the public interest that persons displaced by such a public project be fairly compensated for the loss of property and other losses incurred as the result of a taking by a condemnor. Sec. 32.19 (1), Stats. The "other losses," known as relocation payments, are specifically set forth in sec. 32.19, et seq., Stats., and are designed to compensate an owner for the inconvenience and losses as a result of the taking by the condemnor. 63 Op. Att'y Gen. 201, 202 (1974).
The relevant statute reads in part:
 Any condemnor which proceeds with the acquisition of real and personal property for purposes of any project for which the power of condemnation may be exercised, shall make fair and reasonable relocation payments to displaced persons, business *Page 96 
concerns and farm operations under this section. Payments shall be made as follows:. . . .
Section 32.19 (3), Stats.
These payments include reimbursement for moving expenses (sec.32.19 (3)(a) and (b), Stats.), replacement housing (sec. 32.19
(4), Stats.), business or farm replacements, (sec. 32.19 (4m), Stats.), and incidental expenses incurred in the transfer of the property (sec. 32.19 (5), Stats.).
In my opinion, the proposed relocation plan does not comply with the applicable statutes and your department is not authorized to approve the plan. Therefore, it is unnecessary to decide whether the municipality has authority to undertake the project in question.
The municipality proposing the relocation plan is a "condemnor" for the purposes of the Relocation Assistance Act (sec. 32.185, Stats.), even though it does not intend to exercise its eminent domain powers. As a condemnor, the municipality must strictly adhere to the requirements of ch. 32, Stats., in spite of its announced intention to proceed by voluntarily negotiated purchases. Intent is immaterial under those circumstances. 68 Op. Att'y Gen. 3, 4 (1979).
As noted above, sec. 32.19 (3) Stats., enumerates the types of benefits available to displaced persons. Also, sec. 32.19 (2m), Stats., requires the condemnor to provide displaced persons with pamphlets describing in detail their rights under eminent domain laws, including rights to relocation assistance under sec. 32.19, Stats. The statutes do not expressly authorize any other procedure to be used or any other types of benefits to be paid. In my review of those provisions I find no authority to justify the loan concept which this project envisions. As a result, I can only conclude that the Legislature, by specifically enumerating the types and amounts of payments authorized to be paid to owners for the taking of their property, intended to exclude all other forms of payment. See Gottlieb v. Milwaukee, 90 Wis.2d 86, 95,279 N.W.2d 479 (Ct.App. 1979).
It has been suggested that displaced persons may be free to waive statutory rights and benefits and that such waivers, if truly voluntary, might justify a departure from the statutory schedule of relocation *Page 97 
benefits. The question of an individual's right to waive these benefits is a close one. The statutes do not address the issue except to provide that a person's failure to present a relocation assistance claim within two years after the condemnor takes possession of the property results in the loss of benefits. There is judicial authority for the proposition that individuals may waive statutory rights and benefits. Faust v. Lady Smith-HawkinsSchool Systems, 88 Wis.2d 525, 533, 277 N.W.2d 303 (1979). However, that decision also said that "when a statutorily private right serves a public policy purpose the persons or entities protected by the statute cannot waive that right." Id. at 533.
By its careful attention to the coverage and structure of benefits it is apparent that the Legislature established a strong public policy in favor of uniform and mandatory procedures to be employed by all condemnors regarding payment of relocation benefits. As a consequence no condemnor in Wisconsin has the authority to tailor a relocation plan or offer of benefits to its own citizens less in scope than provided in the applicable statutes even though the displaced person might be willing to go along with that plan. The issue is not whether the displaced person can choose to waive relocation assistance rights, but whether the condemnor has the power to request or require such a waiver in the first place. I conclude that it has not.
In summary, it is my opinion that a condemnor may not offer displaced persons a loan or alternative assistance in lieu of payments authorized in sec. 32.19, Stats. Moreover, condemnors do not have the authority to obtain written waivers of relocation assistance benefits as a condition for participation in a particular acquisition program.
I recognize that these conclusions substantially reduce the flexibility of condemnors in shaping relocation assistance plans to fit particular situations and public objectives. It might well be that over a decade of experience with the administration of the Relocation Assistance Act indicates that in some cases alternative kinds of benefits and a waiver procedure might serve the best interest of both displaced persons and the general public interest. However, given the express language of the statutes, I believe that only the Legislature *Page 98 
itself may address the question of when and how alternative benefits and procedures should be allowed.
BCL:DSF